IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BRIDGET AKINTAYO,                *

    Plaintiff,                 *

    v.                      *        CIVIL NO. JKB-25-2938

UNITED AIRLINES INC. et al.,      *

    Defendants.          *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM

Plaintiff Bridget Akintayo filed a complaint against Defendants United Airlines Inc. ("United") and Sedgwick Claims Management Services Inc. ("Sedgwick"). (ECF No. 1.) Currently pending before the Court are two motions, a Motion to Dismiss filed by United (ECF No. 15) and a Motion to Dismiss filed by Sedgwick (ECF No. 27). For the reasons that follow, both motions will be granted and the complaint will be dismissed.

### I.    Factual Background

Plaintiff filed a complaint against Defendants alleging that she sustained injuries as a result of a "severe in-flight incident aboard United Airlines Flight 613 on January 23, 2025." (ECF No. 1 ¶ 1.) Defendant United is "a commercial air carrier incorporated in Delaware with its principal place of business in Chicago, Illinois" and Defendant Sedgwick "is an insurance and claims management company that administers claims on behalf of United Airlines." (*Id.* ¶ 6–7.) Plaintiff alleges that she was on a United flight en route to Dulles Airport from Lagos, Nigeria and that, while the flight was in Côte d'Ivoire airspace, "the aircraft experienced a critical malfunction, which caused abrupt and violent loss of altitude and an uncontrolled descent from cruising level reportedly caused by sudden autopilot disconnection and navigation system failure." (*Id.* ¶ 8–10.)

1

Plaintiff alleges that she "sustained immediate pain, bruises, burns, swelling, and musculoskeletal injuries." (*Id.* ¶ 12.) She was treated for her physical injuries in Nigeria and in Maryland. (*Id.* ¶ 13–22.) She also sought mental health treatment. (*Id.* ¶ 23–38.)

On the basis of these allegations, Plaintiff brings three claims. She brings a breach of contract claim against United for its alleged failure to ensure a safe flight. (*Id.* ¶ 31–34.) She brings a claim for liability under the Montreal Convention against United, which "governs international air carriage and holds carriers strictly liable for passenger injuries caused by in-flight accident." (*Id.* ¶ 35–38.) And she brings a claim for bad faith claims handling against Sedgwick, alleging the Sedgwick "has unreasonably undervalued Plaintiff's claim and failed to conduct a good-faith evaluation." (*Id.* ¶ 39–41.)

## II.   *Legal Standard*

A motion to dismiss under Rule 12(b)(2) tests the Court's personal jurisdiction over the defendant, which "raises an issue for the court to resolve, generally as a preliminary matter." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016). Where, as here, a court determines personal jurisdiction "on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a *prima facie* showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005) (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). "Under such circumstances, courts must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.* (citation and quotation marks omitted). "[T]he district court may address the question of personal jurisdiction as a preliminary matter, ruling solely on the basis of motion papers, supporting legal

2

memoranda, affidavits, and the allegations in the complaint." *Armstrong v. Nat'l Shipping Co. of Saudi Arabia*, Civ. No. ELH-13-3702, 2015 WL 751344, at *3 (D. Md. Feb. 20, 2015).

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 446 U.S. at 662. A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

## III.   *Analysis*

### A.   *United's Rule 12(b)(2) Motion*

United argues that the complaint should be dismissed for lack of personal jurisdiction pursuant to Rule 12(b)(2). Plaintiff counters that there is personal jurisdiction over United because:

> Plaintiff, a Maryland resident, purchased her ticket for United Flight 613 while domiciled in Maryland, returned home to Maryland after the incident, and received extensive medical treatment for her injuries in Maryland. United maintains continuous business operations within the State, is registered to do business here, and derives substantial revenue from flights that originate from or arrive in Maryland airports.

(ECF No. 30 at 1.) Plaintiff also explains that "United conducts regular commercial air service to and from Baltimore/Washington International Thurgood Marshall Airport ("BWI"), leases

3

facilities there, employs Maryland personnel, [and] advertises to Maryland residents . . . ." (*Id.* at 3.) Plaintiff provides financial filings that reflect that United paid over $3 million per year in personal property assessments in Maryland between 2022 and 2024. (*Id.*) The claims against United will be dismissed for lack of personal jurisdiction.

Courts have personal jurisdiction over a non-resident defendant if the exercise of such jurisdiction is both authorized by the state's long-arm statute and comports with the due process requirements of the Fourteenth Amendment. *Phillips v. British Airways*, 743 F. Supp. 3d 702, 707–08 (D. Md. 2024) (citing *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003)). Maryland's long-arm statute authorizes jurisdiction in various circumstances. *See* Md. Code Ann., Cts. & Jud. Proc. § 6-103. "The Maryland courts have consistently held that the state's long-arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Constitution. . . . Thus, our statutory inquiry merges with our constitutional inquiry." *Carefirst*, 334 F.3d at 396–97 (citation omitted). At the same time, "both prongs must be satisfied in order to properly exercise personal jurisdiction." *Collard v. Bank of Am.*, Civ. No. SAG-25-0041, 2025 WL 1258039, at *2 (D. Md. May 1, 2025) (citing *Pinner v. Pinner*, 225 A.3d 433, 443 (Md. 2020)).

To comport with the Due Process Clause, there must be "minimum contacts with the forum so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice . . . . The nature and quantity of forum-state contacts required depends on whether the case involves the exercise of 'specific' or 'general' jurisdiction." *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 131 (4th Cir. 2020) (citations and quotation marks omitted).

4

### *1. General Jurisdiction*

Turning first to general jurisdiction, "[w]ith respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (citations, quotation marks, and alterations omitted). But, to allow "general jurisdiction in every State in which a corporation engages in a substantial, continuous, and systematic course of business" would be "unacceptably grasping." *Id.* at 138 (citations, quotation marks, and alterations omitted). Rather, the inquiry is whether the "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Id.* at 119 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). And "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* at 139 n.20.

United is not incorporated in Maryland, nor does it have its principal place of business here. Thus, the Court must assess whether this presents the "exceptional case" in which "a forum other than its formal place of incorporation or principal place of business [is] so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 571 U.S. at 139 n.19. This is not such a case. There is nothing to suggest that United's contacts with Maryland are distinguishable from its contacts with any other state. *See Fidrych*, 952 F.3d at 134 ("Because there is nothing that would distinguish Marriott's relationship with South Carolina from its relationship with any of the other states where it does business but where it is not incorporated or headquartered, this is not the exceptional case for general jurisdiction contemplated by the *Daimler* Court."); *see also Phillips v. Brit. Airways*, 743 F. Supp. 3d 702, 709 (D. Md. 2024) (concluding that the court did not have personal jurisdiction over British Airways).

Plaintiff contends—without elaboration or citation to authority—that United is "registered to do business" in Maryland. (ECF No. 30 at 1.) This does not change the Court's analysis. *See* Md. Code Ann., Corps. & Ass'ns § 7-210 (providing that registration in Maryland "(1) [d]oes not of itself render a foreign corporation subject to suit in this State; and (2) [i]s not considered as consent by it to be sued in this State."); *see also Phillips*, 743 F. Supp. 3d at 710–11 (concluding that British Airways' registration to do business and appointment of a resident agent in Maryland did not confer general jurisdiction over British Airways).[1]

### 2. *Specific Jurisdiction*

Turning next to specific jurisdiction, "[i]n contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear*, 564 U.S. at 919 (citation and quotation marks omitted).

> In determining whether specific jurisdiction exists, we consider (1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally "reasonable."

*Carefirst*, 334 F.3d at 397 (citations omitted).

This case is in many ways analogous to *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124 (4th Cir. 2020). There, plaintiffs brought claims against Marriott in South Carolina, including a breach of implied warranty of safety claim and negligence claim for injuries that occurred at a Marriott-affiliated hotel in Italy. *Id.* at 140. Plaintiff was a resident of South Carolina and Marriott's website permitted booking from South Carolina. *Id.* at 129. There were ninety Marriott franchises

---

[1] Plaintiff does not appear to argue that the Court has personal jurisdiction over United on the basis of her Montreal Convention claim. Nor could she. *See Phillips*, 743 F. Supp. 3d at 710 (concluding that the Montreal Convention has no bearing on the question of personal jurisdiction).

6

and hotels licensed or managed by Marriott in South Carolina. *Id.* at 128. The Fourth Circuit concluded that no specific jurisdiction existed over Marriott in South Carolina because, *inter alia*, "none of Marriott's actions or omissions that form the basis of the Plaintiffs' claims took place in South Carolina or were otherwise directed at South Carolina residents"; "Marriott's . . . involvement in ninety hotels in the state have nothing to do with the claims asserted in this case and thus are not relevant"; and "the website [through which Marriott engaged in commercial transactions] is not directed at the residents of any particular forum." *Id.* at 140–43.

Likewise here. The flight did not leave from an airport in Maryland and none of the injuries occurred in Maryland.[2] That United operates flights out of BWI has no bearing on this case, as the relevant flight did not depart from BWI. That United leases space at BWI, employs personnel in Maryland, and is taxed by Maryland authorities likewise has no bearing, as those facts are entirely disconnected from the claims in this case. Perhaps the strongest jurisdictional hook is that Plaintiff allegedly booked the flight while in Maryland. However, this is insufficient to satisfy the minimum-contacts requirement needed to confer personal jurisdiction over United. *See Fidrych*, 952 F.3d at 142–143 (concluding that the fact that Marriott's website permits online booking from South Carolina does not confer specific jurisdiction, given that it simply "facilitate[s] the making of a one-off hotel reservation" and "Marriott does not use it to target South Carolina residents in particular"); *see also Carefirst*, 334 F.3d at 401 ("[W]hen CPC set up its generally accessible, semi-interactive Internet website, it did not thereby direct electronic activity into Maryland with the manifest intent of engaging in business or other interactions within that state in particular."); *Stoddard v. Subaru of Am., Inc.*, Civ. No. PWG-20-2164, 2021 WL 3472129, at *6 (D. Md. Aug.

---

[2] That Plaintiff "continues to suffer and treat . . . her injuries" in Maryland, (*see* ECF No. 30 at 4), does not change the Court's analysis. *See Fidrych*, 952 F.3d at 143 (explaining that there was no specific jurisdiction although "the Fidryches are South Carolina residents, and the effects of Bud's injury are felt in South Carolina" because those facts focus on the *plaintiff's* contacts with the forum state, not the defendant's).

7

6, 2021) ("[T]he fact that Stoddard reserved his rental on the Hertz website, which is available throughout the United States, 'without focusing on and targeting' Maryland, does not confer personal jurisdiction over Overland in Maryland." (quoting *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997)).

Because the Court concludes that the Due Process Clause forbids the exercise of personal jurisdiction over United, it does not examine whether the exercise of personal jurisdiction would be appropriate under Maryland's long-arm statute.

### B. Sedgwick's Motion to Dismiss

Sedgwick filed a motion to dismiss, arguing that Maryland law precludes Plaintiff from bringing suit against it and that, in any event, she fails to state a claim. (ECF No. 27.) Sedgwick's motion will be granted and the claims against it will be dismissed.

The complaint is completely devoid of any facts relating to the claims against Sedgwick. (*See generally* ECF No. 1.) The entirety of the factual allegations against it are that "Sedgwick, acting as claims administrator and agent of United [A]irlines, has unreasonably undervalued Plaintiff's claim and failed to conduct a good-faith evaluation." (*Id.* ¶ 40.) This is plainly insufficient to withstand a motion to dismiss. These barebones allegations make it impossible to understand what precise claim Plaintiff sought to bring against Defendant Sedgwick, as the Motion to Dismiss makes clear. (*See* ECF No. 27-1 (making arguments with respect to Maryland's Unfair Claim Settlement Practices Act, tort, and contract).) This reflects precisely why Rule 8 requires pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

In any event, Plaintiff cannot bring a claim pursuant to Maryland's Unfair Claim Settlement Practices Act because she does not allege that she was an insured party. *See* Md. Code

8

Ann., Ins. § 27-303 ("It is an unfair claim settlement practice . . . for an insurer . . . to . . . fail to act in good faith . . . in settling a *first-party* claim under a policy of property and casualty insurance" (emphasis added).)    She likewise cannot bring a bad faith claim sounding in tort because "Maryland law recognizes a tort cause of action only *by an insured party* where an insurer refuses in bad faith to settle a third-party's claim against the insured." *Moye v. Avis Budget Grp.*, Civ. No. TDC-14-2714, 2015 WL 410515, at *4 (D. Md. Jan. 27, 2015) (emphasis in original)  Plaintiff also makes no allegation that she entered into a contract with Sedgwick or was owed some contractual duty.

Finally, Plaintiff wholly failed to respond to the Motion to Dismiss, having filed no opposition, and the time for doing so has long passed.

Accordingly, Plaintiff's claim against Defendant Sedgwick will be dismissed.

## IV.    Conclusion

For the foregoing reasons, the two motions to dismiss will be granted, the complaint will be dismissed, and the case will be closed.  A separate order follows.

DATED this 24 day of April, 2026.

BY THE COURT:

James K. Bredar
United States District Judge

9